## First State Bank's Receiver v. Farmers Bank.

(Decided November 11, 1913).

### Appeal from Ohio Circuit Court.

Banks—Powers of Cashier.—The cashier of a bank has general authority to discount and re-discount paper owned by the bank and to sell and assign paper owned by it for a valuable consideration; and where a cashier in the usual course of business sells and assigns paper for a valuable consideration, his acts are binding on the bank.

CLAUDE MERCER for appellant.

ERNEST WOODWARD, M. L. HEAVRIN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In November, 1910, H. H. Lewis was cashier of the Bank of Centertown and A. C. Crouch was cashier of the First State Bank of Ekron. Crouch, desiring to get out of the Bank of Ekron, sold his stock for $3,600 to S. C. Lewis, a brother of H. H. Lewis, and in part payment for the stock Lewis drew his check in favor of Crouch on the Bank of Centertown for $2,000. S. C. Lewis did not have any money in the bank of Centertown, and when first presented for payment the check was not paid. A short while afterwards, however, H. H. Lewis accepted a note from S. C. Lewis for $2,000, secured by Bank of Ekron stock, and agreed to pay the

check if the Bank of Ekron would rediscount certain
paper the Bank of Centertown held. Included in this
paper proposed to be rediscounted was a note of J. W.
Gayle for $1,000, secured by railroad stock. S. C. Lewis,
who was then cashier of the Bank of Ekron, agreed to
take for the Bank of Ekron this Gayle note, and there-
upon it was assigned without recourse by the Bank of
Centertown to the Bank of Ekron and $1,000 paid for
it by the Bank of Ekron to the Bank of Centertown.

In December, 1910, the Bank of Ekron failed and
the Bank of Centertown also failed in January, 1911.
The appellant, Morris H. Beard, was appointed receiver
of the Bank of Ekron, and, by some arrangement with
the stockholders of the Bank of Centretown, the appel-
lee, Farmers Bank, purchased its assets and assumed its
liabilities. When Beard was appointed receiver he
found this $1,000 Gayle note among the assets of the
Bank of Ekron, and after making some efforts to collect
it, he brought this suit against the Farmers Bank in
March, 1912, to recover the amount of it.

The suit was brought on the theory that S. C. Lewis,
as cashier of the Bank of Ekron, and H. H. Lewis, as
cashier of the Bank of Centertown, entered into a fraud-
ulent agreement by which the Bank of Centertown
transferred the Gayle note, which both of them knew was
worthless, to the Bank of Ekron, and took from the
assets of the Bank of Ekron $1,000 in money and trans-
ferred it to the Bank of Centertown.

It was averred in the petition that S. C. Lewis and
H. H. Lewis concealed from the directors and officers of
their respective banks all knowledge of this transaction,
and as the Bank of Ekron did not receive any considera-
tion for the $1,000 paid out of its assets to the Bank of
Centertown for this Gayle note, it was entitled to re-
cover this sum.

The cashier of a bank has general authority to dis-
count and rediscount paper owned by the bank and to
sell and assign paper owned by it for a valuable con-
sideration, and unless this transaction was attended with
the fraud charged the Bank of Centertown, or its pur-
chaser, the Farmers Bank, standing in its place, should
not be required to return to the Bank of Ekron the $1,000
paid by it for this Gayle note.

The right of recovery on the part of the Bank of
Ekron, if any there be, rests on fraud, and particularly
on the fraud of H. H. Lewis, cashier of the Bank of

Centertown. If H. H. Lewis, as cashier of the Bank of Centertown, knew this Gayle note was worthless when he assigned it to the Bank of Ekron, and the sale of it was a part of a fraudulent scheme on his part to get money so that the check given by his brother on the Bank of Centertown might be honored, then the Bank of Centertown, and through it the Farmers Bank, should be required to refund the money.

On the other hand, if the sale of the note was made in good faith and in the ordinary course of business, neither the Bank of Centertown nor its purchaser is liable, as the assignment of the note was made without recourse.

The lower court, upon hearing the case, dismissed the petition, and although there is no written opinion in the record, it is manifest that the court must have been of the opinion that the evidence did not sustain the averments of the petition. We have read with some care the evidence, and while it shows pretty conclusively that Crouch acted in bad faith, the evidence does not warrant the assumption that either of the Lewis' was actuated by any fraudulent purpose.

Before H. H. Lewis, as cashier, advanced the $2,000 on the check of S. C. Lewis, he required S. C. Lewis to execute to the Bank of Centertown his note for $2,000, secured by an equal amount of stock in the Bank of Ekron. The evidence shows that when H. H. Lewis accepted this stock as collateral he believed in good faith that the Bank of Ekron was a solvent institution and that the note was well protected by the stock. However, as a matter of fact at that time the Bank of Ekron was insolvent, but H. H. Lewis had no knowledge or information of this, nor does the evidence show that S. C. Lewis knew its failing condition, although Crouch did. The only mistake committed by H. H. Lewis in connection with the lending of this $2,000 was his failure to advise with the directors of the bank about it, but this circumstance is not at all sufficient to show that H. H. Lewis was guilty of fraud or bad faith in making the loan.

As the $2,000 advanced on this note had to be taken out of the bank to pay the check given by S. C. Lewis, it became necessary for the bank to rediscount some of its paper in order to increase its cash reserve, and thereupon it was agreed as a part of the arrangement by which the $2,000 was advanced that the Bank of Ekron would buy some of the paper of the Bank of Centertown,

including this Gayle note. An effort is made to show that H. H. Lewis knew at the time he sold this note to the Bank of Ekron that it was worthless, but the evidence does not justify this conclusion. The Bank of Ekron had been dealing in a satisfactory way with Gayle and his paper for several years, and there is no evidence in the record that H. H. Lewis or S. C. Lewis knew or had reason to believe that the Gayle note was not worth its face value.

Some feeling has been injected into the case on account of an effort on the part of H. H. Lewis to show that he was influenced to advance the $2,000 to S. C. Lewis and accept his note, secured as before stated, for this amount, by representations made to him by the Hon. Claude Mercer, a well known attorney of Hardinsburg and now counsel for appellant. We have read very carefully the evidence and do not find that Mr. Mercer did or said anything that would cast the slightest reflection upon his integrity as a man or lawyer. He testifies that he believed the Bank of Ekron to be a solvent institution when H. H. Lewis accepted its stock as security for the note, and that he so informed Lewis; and there is no doubt that Mr. Mercer in perfect good faith believed that the bank was all right at this time. He had no information of any kind that would lead him to suspect that it was not then solvent. His connection with the transaction related solely to his employment by Crouch to collect the check that S. C. Lewis had given him, and in this professional capacity the only interest he had was to protect as best he could the interest of his client.

Upon the whole case we think the judgment of the lower court was correct, and it is affirmed.